Filed 1/4/24  P. v. Franke CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079559 |
| v. | (Super.Ct.No. FVI1002158) |
| PHILLIP RYAN FRANKE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Kawika Smith, Judge.  Reversed.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Kathryn Kirschbaum, Deputy Attorney Generals, for Plaintiff and Respondent.

Defendant and appellant Phillip Ryan Franke is before this court for the third time on a postjudgment order denying his Penal Code[1] section 1170.95[2] petition to vacate his first degree murder conviction. In 2011, defendant was involved in the robbery and murder of Sandi Duncan. Defendant was convicted of first degree murder, robbery and a principal armed weapons use enhancement. In 2012, defendant's convictions were affirmed on appeal in *People v. Franke* (July 25, 2012, E053756) [nonpub. opn.] (*Franke I*).[3]

In 2019, defendant filed his petition for resentencing pursuant to Senate Bill No. 1437 (Stats. 2018, c. 1015, § 4, eff. Jan. 1, 2019) (Sen. No. 1437), and section 1172.6 (Petition). The trial court struck the Petition concluding that Sen. No. 1437 was unconstitutional, and defendant appealed. This Court found that Sen. No. 1437 was constitutional, and remanded the matter to the trial court for it to consider the merits of the Petition. (*People v. Franke* (June 24, 2020, E072727 [nonpub. opn.] (*Franke II*).) Upon remand, the trial court summarily denied the Petition. Defendant appealed, and this court reversed the summary denial of the Petition ordering that the trial court conduct an evidentiary hearing. (*People v. Franke* (August 25, 2021, E075868) [nonpub. opn.]

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Section 1170.95 was renumbered effective June 30, 2022, to section 1172.6. (Stats. 2022, c. 58 (Assem. Bill No. 200), § 100, eff. June 30, 2022.) We will refer to the new numbering in this opinion.

[3] We take judicial notice of our three prior opinions both on our own motion and based on the request for judicial notice filed by defendant.

(*Franke III*). After conducting the evidentiary hearing, the trial court once again denied the Petition.

Defendant contends we must reverse the trial court's order as the evidence does not establish beyond a reasonable doubt that he is guilty of murder under current law. He further contends the trial court applied the wrong standard after the evidentiary hearing in denying the Petition. The People concede that the record is ambiguous as to whether the trial court applied the correct standard in denying the Petition and remand is appropriate. We will remand to the trial court for it to reconsider the Petition under the appropriate standard of review.

## FACTUAL AND PROCEDURAL HISTORY

### A. UNDERLYING FACTS

The facts are taken directly from *Franke I*.

"Victim Sandi Duncan (nicknamed 'Sweet P') was a student at Barstow Community College. On September 20, 2009, around 10:30 a.m., she cashed a financial aid check for $458.37. She went home, showered, changed, then went out again. When she did not come home that night, one of her roommates was worried; he phoned her and texted her, but she did not respond.

"The next day, September 21, 2009, between 5:30 and 6:00 p.m., a man looking for firewood found Duncan's body. It was out in the desert, in a dry creek bed about 100 yards from his house in Apple Valley.

"The body was lying face up. There were two ligature marks on Duncan's neck, mostly on the left and front. In addition, Duncan had been shot once in the chest and

3

once in the abdomen.  Both bullets had exited through her back.  The bullets were found under her body, indicating that she had been shot where she lay.

"Two empty bullet casings were found within two feet of the body.  A third, unfired bullet was also found.  All three casings were marked '.380 auto.'

"In the opinion of an expert forensic pathologist, the strangulation occurred first, followed by the shooting.  Duncan was still alive when she was shot; the gunshot wounds were the cause of death.  The two gunshot wounds were inflicted one right after the other—'bang, bang.'  The time of death was at least 8 hours and perhaps as much as 24 hours before the body was found.

"There was a fresh set of tire tracks in the area.  These indicated that a vehicle had made a three-point U-turn.  There were also six shoe prints.  One shoe print was right next to the body; five were farther away, next to some tire tracks.  The shoe prints displayed two distinct sole patterns.

"There were no drag marks.  Moreover, none of the shoe prints matched Duncan's shoes.  Investigators concluded that Duncan had been 'picked up and placed' where she was found.

"About a week later, on September 28, 2009, a police officer assigned to observe one Melvin Satcher spotted Satcher riding as a passenger in a car that defendant was driving.  The car had a cracked taillight.  The officer performed a traffic stop.
"Defendant consented to a search of the car.  Under the front passenger seat, the officer found a distinctive beaded purse later identified as Duncan's.  It was turned inside out.  Defendant said it belonged to his mother.

4

"In the trunk, the officer found fireworks that appeared to have been altered. He arrested defendant for possession of illegal fireworks.

"Defendant's tires matched tire tracks found at the scene. For example, one of his tires was the same size and the same width and had the same tread design as one of the tracks. However, the tracks did not have enough detail to support a determination that they had been made by defendant's tires (rather than by tires of the same make and model).

"Shoes that Satcher was wearing matched the shoe print found near Duncan's body. The shoes that defendant was wearing, however, did not match any of the shoe prints found at the scene; neither did a second pair in defendant's car. The police searched defendant's home but did not find any additional shoes.

"The police interviewed defendant on the day of his arrest and again the next day. The interviews were audiotaped, and the tapes were played for the jury.

"Defendant said he lived in Las Vegas. He also said he and Satcher were friends. They had met while incarcerated together in the military.

"At first, defendant denied even being in California on the date of the shooting. When the police told him they could prove that he was in Barstow, however, he changed his story; he admitted being in Barstow but claimed he left town in the morning. He specifically said he did not lend his car to anybody. He then changed his story again; he claimed a friend of Satcher paid him $100 to borrow his car.

5

"Defendant then changed his story again.  He said that, at Satcher's request, he agreed to drive four people to Los Angeles: Satcher, the victim, and two men he did not know.  The victim said she wanted to go to Los Angeles to go shopping.

"It was afternoon.  One of the other two men said he needed to use the bathroom, so defendant got off the freeway.  The man told him to pull into a 'little cut.'  Defendant pulled in, made a three-point turn, and stopped.  The other four got out, but only three got back in.  They told him, "[D]on't worry about it, just go," so he did.

"The police told defendant they knew he was lying because the victim had not left any footprints.  Defendant then changed his story yet again.  He said that the victim was sitting in the front passenger seat; Satcher and the other two men were sitting in the rear.  After they pulled off and stopped, one of the other two men started to strangle the victim, using a white cloth.  The victim 'tried to fight.'  Defendant got out of the car and walked around it.

"After a while, all three other men got out.  Satcher just 'st[ood] around looking' while one of the other two men opened the front passenger door and pulled the victim out.  Simultaneously, defendant got back in the car.  He moved the car forward, about to leave, but he decided he 'wasn't gonna leave [Satcher]. . . .' He then heard two shots.  The other three men got back in the car, and defendant drove away.

"When the interview resumed the next day, at first, defendant stuck to this story.  However, he did say it was Satcher who told him where to drive and where to stop.  The police repeatedly said they knew he was lying because there were only two sets of shoe prints.  Defendant then changed his story one final time.  He said the other two men never

6

got out of the car.  Each of the two strangled the victim; whenever one of them got tired, they 'switched off.'  Satcher warned them not to let go.  It was Satcher who opened the car door and pulled the victim out.

"Defendant admitted seeing Satcher shoot the victim.  Satcher stood over her and fired two shots downward—'like pow, pow.'  A third round jammed, so Satcher removed the magazine, took out the bullet, wiped it, and put it back in the chamber.  Satcher later told defendant that he shot the victim in the chest and in the stomach.

"When asked why they did it, defendant said, '[S]he was supposed to have some check . . . that she cashed and . . . they were trying to get her money. . . .'  Sometime before the shooting, Satcher had told defendant that 'she gets checks every other week.'  However, the victim had less money than they expected—only about $200.  They gave defendant $40 for gas, then split the rest between them.

"When asked if his DNA would be on the murder weapon, defendant said it might be, because a few days earlier, Satcher had been looking at a .38-caliber semiautomatic, and defendant had touched it.

"Although defendant's and Satcher's homes were searched, the murder weapon was never found.

"Defendant's statement included many details that the police had not told him and had not made public, including the fact that the victim had been strangled and shot twice, in the chest and abdomen; the fact that the bullets were .38–caliber; and the fact that the vehicle had made a three-point turn.  According to the pathologist, the fact that there were two separate ligature marks was consistent 'with someone struggling and the

7

ligature slipping[.]'  The fact that there was no mark on the back of Duncan's neck was consistent with her being in the front seat of a car and being strangled by someone in the back seat."  (*Franke I*, *supra*, E053756, pp. *1-*3, fns. omitted.)

B.     CONVICTION AND SENTENCE

Defendant was convicted of first degree murder (§ 187) and second degree robbery (§ 211).  In addition, the jury found true the allegation that a principal was armed with a firearm (§ 12022, subd. (a)(1)).  He was sentenced to 26 years to life.  On July 25, 2012, we affirmed the convictions.

C.     PETITION

Defendant filed the Petition on January 7, 2019.  He contended an information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences theory, and he was convicted at trial under either of these theories.  He further alleged he could not be convicted of first degree murder after the changes made to sections 188 and 189 effective January 1, 2019. He insisted he was not the actual killer and was not a major participant in the felony.  The Petition was dismissed by the trial court based on it concluding that Sen. No. 1437 was unconstitutional.

D.     PRIOR APPELLATE PROCEEDINGS

Defendant filed an appeal based on the trial court concluding that Sen. No. 1437 was unconstitutional.  This court found that Sen. No. 1437 was constitutional and remanded to the trial court for it to consider the Petition on its merits.  The matter was remanded.  The trial court summarily denied the Petition concluding that defendant's

8

conviction was based on an aiding and abetting theory, which would support his murder conviction under the current law. Defendant again appealed. This court concluded that the record of conviction did not demonstrate, as a matter of law, that the jury convicted defendant under a theory of murder that remains valid after the enactment of Sen. No. 1437. On the record, it was not possible to conclude as a matter of law that the jury convicted defendant only on a direct aiding and abetting theory and not under the felony-murder rule. We concluded that the trial court erred by summarily denying the Petition and we remanded in order for the trial court to conduct an evidentiary hearing.

E.    PROCEEDINGS UPON REMAND AND RULING

Upon remand, the People requested that the trial court take judicial notice of the record of conviction. The People also filed a motion to deny the Petition. They alleged that the People proceeded on two theories of murder: felony murder; and willful, deliberate and premeditated murder. They contended that the record of conviction provided ample evidence that defendant was a major participant or acted with reckless indifference to human life. The evidence supported that only defendant and Satcher were present at the crime scene. It was difficult to believe that Satcher carried Duncan by himself to the spot where she was shot. Defendant facilitated the strangulation and shooting by driving off the freeway to a remote location. Defendant took $40 that was taken from Duncan. Further, he returned a week later to Barstow to hang out with Satcher. It was inconceivable that defendant had not known of the plan to rob and kill Duncan. Further, he could be found guilty of aiding and abetting the murder.

9

Defendant filed a memorandum of points and authorities in support of the Petition on June 23, 2022. He contended that since the trial transcripts did not provide proof beyond a reasonable doubt that defendant was the killer, possessed the intent to kill, or acted as a major participant with reckless indifference to life, the court should grant the Petition. The prosecution never argued at trial that defendant was an aider and abettor; the argument focused on defendant being guilty of robbery, and therefore, murder under the felony-murder rule. He was not a major participant and did not act with reckless indifference to life. The evidence did not support that defendant helped plan the robbery, provided the weapon, knew a weapon would be used during the robbery, or that he was in a position to stop the murder committed by Satcher and two other persons.

On June 30, 2022, the trial court held the first hearing on the Petition. The trial court stated that it had reviewed the trial transcript and the two police interviews of defendant. The People presented evidence of the reporter's transcript from trial, the clerk's transcript and the exhibits. The People submitted on the trial record. Both parties provided extensive argument. The trial court requested further briefing on the limited issue of how a failure to intervene during the course of the robbery pertains to whether defendant was a major participant or acted with reckless indifference to life.

The People submitted the additional briefing essentially distinguishing all of the cases cited by defendant in his briefing and oral argument. Defendant also filed supplemental briefing providing how the cases he had cited supported his argument that he could not be convicted of murder under the current law.

10

The trial court heard further arguments on the Petition on August 4, 2022. The People stated there were no prior cases that were directly on point. Defendant argued there was too much speculation as to what actually occurred before and after Duncan's murder to establish that he was guilty of murder under the current law. Defendant's counsel argued that none of defendant's actions facilitated Duncan's death and there was no evidence that he knew Satcher was going to kill Duncan. The fact that he aided and abetted robbery did not foreclose relief as he was not a major participant and did not act with reckless indifference to life.

The trial court noted, "In this case, given that she's driven to a remote location, she's killed before the money is taken, and that [defendant] apparently gets an equal portion, . . . there's at least circumstantial evidence that he did participate in the planning of the murder as part of the robbery." The People argued that since they knew the victim, they had to kill her. Defendant was a major participant based on the type of murder, location of the murder, his conduct after the murder and his admissions.

The trial court asked to be directed to that part of the record that showed proof beyond a reasonable doubt that defendant knew and participated in the murder. Defendant argued there was nothing in the record that he knew what was going to happen to Duncan beyond a reasonable doubt. Defendant's counsel also argued that the jury only had to find that defendant committed robbery and that a murder occurred during the robbery. The jury never made a finding that defendant had the intent to kill or was a major participant.

11

The trial court in making its ruling noted that it had spent many hours considering the case and had "gone back and forth." The trial court stated, "I've written memos clarifying my thoughts that argue both ways, which would seem to suggest that the issues are not clear as to reasonable doubt. [¶] Preliminarily, I think the Court is, my role is to determine if there was enough evidence, if there is enough evidence to support the charge of murder, if it has been proved beyond a reasonable doubt in the absence of the felony murder rule." The trial court stated that after looking at the entire record in the case, "there was sufficient evidence for the jury to find that [defendant] is guilty of murder. So the petition is denied."

The trial court clarified it was looking at all the "factors" in determining whether defendant was a major participant who acted with reckless indifference to life. The nature of the robbery indicated that the killing of Duncan was part of the plan. She was taken to a remote location, she knew Satcher, and the money was taken after the killing. The trial court stated, "now it raises the obvious question about what evidence is there that [defendant] knew of the plan, and the Court has considered that as well, but I think, taking all of the facts into consideration, it leaves the Court with the belief that a jury could, under this evidence, find that [defendant] was involved in the murder as well as the robbery."

The trial court noted the evidence appeared to establish that the only footprints found outside the car belonged to Satcher. As such, if defendant never left the car, he sat in the car while Duncan was being strangled and did not intervene. His actions after the murder suggest that he was more involved than he admitted in his statement. Such

12

evidence "weigh[ed] towards the jury's verdict that he is guilty of the murder." The trial court also noted that the fact defendant stayed the night with Satcher the night of the murder, he kept the purse, and then returned a week later to stay with Satcher, "do not suggest someone who is shocked by what happened, or that he was not a part of what had happened."

The trial court then found that defendant was a major participant and acted with reckless indifference to life by failing to intervene; his actions after the murder were dismissive of the "gravity or quality of what had occurred." Further, the trial court believed that defendant had the opportunity to extricate himself when he pulled off the highway. The trial court concluded, "So the Court finds that he was a major participant, and that he acted with reckless indifference to human life in the unfolding of these events. He may also have been aider and abettor to the murder itself. There is much less evidence to support that theory, but again, given the totality of the evidence, I believe a jury would be able to find aiding and abetting as an alternate theory to the murder. So at this time as I've indicated, the petition is denied."

## DISCUSSION

Defendant contends on appeal that the trial court erred by denying his petition. He first insists that this court can independently review the record in this case and conclude that he could not be found, beyond a reasonable doubt, guilty of murder under current law. In the alternative, he insists the trial court's ruling was not clear as to whether it found that the People proved beyond a reasonable doubt that he would be guilty of first degree murder after the changes to sections 188 and 189, or improperly based its

13

conclusion that the evidence was "sufficient." The People concede that the record is ambiguous as to whether the trial court applied the correct standard and that remand for a new evidentiary hearing is appropriate.

Initially, defendant spends a considerable amount of time in his opening brief arguing that under any standard of review, the evidence does not support his murder conviction under any theory. He contends this court should independently review whether the People met their burden at the evidentiary hearing. However, this court does not make this determination for the first time on appeal and defendant has provided no legal authority to support his claim. In *People v. Clements* (2022) 75 Cal.App.5th 276, 301, this court rejected that independent review was appropriate on appeal in light of the fact that whether the defendant acted with reckless indifference to life was a predominately factual question. We will only review whether the trial court applied the appropriate standard of review in denying the Petition.

Sen. No. 1437 made "significant changes to the scope of murder liability for those who were neither the actual killers nor intended to kill anyone, including certain individuals formerly subject to punishment on a felony-murder theory." (*People v. Strong* (2022) 13 Cal.5th 698, 707.) Sen. No. 1437 was enacted to " 'ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*Strong*, at 708.) Sen. No. 1437 eliminated murder convictions premised on any theory of imputed malice, i.e. any theory by which a person could be convicted of murder for a killing committed by someone else, such as felony

14

murder or the natural and probable consequences doctrine, unless it was proven that the defendant personally acted with the intent to kill or was a major participant who acted with reckless disregard to human life.  (§§ 188, subd. (a)(3), 189, subd. (e)(1)-(3); see *Strong*, at pp. 707-708.)

Section 1172.6 now provides as follows:  "(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."

15

If the defendant makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c) & (d)(3).)

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).)

The prosecution is "required to establish the defendant is guilty under current law *as a matter of fact* and beyond a reasonable doubt." (*People v. Clements, supra,* 75 Cal.App.5th at p. 296.) "If the superior court finds beyond a reasonable doubt that the petitioner is guilty of murder notwithstanding the amendments to sections 188 and 189, the petitioner is ineligible for relief under section 1172.6." (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951.)

Here, the trial court reviewed the record of conviction, which showed that the People proceeded on the murder charges against defendant on the theories of aiding and abetting first degree murder and felony murder. In its ruling, the trial court first noted that it had prepared two separate memos going both ways and that it seemed to "suggest that the issues are not clear as to reasonable doubt." The trial court at one point also referenced that its role was to determine if the People had proved beyond a reasonable doubt that there was enough evidence to support the murder charge without the felony murder rule.

The trial court also noted in its ruling that after considering the exhibits, transcripts and other records, that there was "sufficient evidence" for the jury to find defendant guilty of murder. Further, the trial court in addressing the theory that defendant aided and abetted the willful and deliberate murder, found, based on the totality of the evidence, that the jury would be able to find defendant guilty under this theory of murder. The record does not establish whether the trial court found the People proved beyond a reasonable doubt that defendant would be convicted of murder under current law, or whether it just found "enough evidence" that could be used to convict him of murder. In

17

light of the trial court's introductory comments that it was not sure if the evidence established that defendant was guilty of murder under current law beyond a reasonable doubt, we cannot state with certainty that the trial court applied the correct standard in denying the Petition.

Applying the incorrect burden of proof at an evidentiary hearing conducted pursuant to section 1172.6 is not per se reversible error. (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745-746.) However, the People state that they do not intend to argue that such error was harmless, and that remand is the appropriate resolution in this case. We will accept the concession of the People and will remand the case for the trial court to clarify its ruling. (See *People v. Lua* (2017) 10 Cal.App.5th 1004, 1021 ["In the face of such an ambiguous record, it is appropriate to remand the matter to the trial court to consider the matter under the correct standard, to the extent it has not already done so"].)

We agree with defendant that a new evidentiary hearing is not necessary. The trial court reviewed all of the records in the case. We order limited remand in order for the trial court to clarify its ruling—that it in fact applied the correct legal standard and concluded beyond a reasonable doubt that defendant would be guilty of murder under current law.[4]

---

[4] We express no opinion as to how the trial court should rule upon remand.

## DISPOSITION

The order denying defendant's Petition is reversed. The matter is remanded for the trial court to evaluate the Petition using the standard of review set forth in this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
Acting P. J.

We concur:

FIELDS _____
J.

RAPHAEL _____
J.